IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHARD ALLEN BROWN,

        **Plaintiff,**

v.                                                  Civil Action No. 3:15cv104

RONNIE CLEMENTS,
SARAH JANE BRUBAKER,
NIRAJ VERMA, F. DOUGLAS BOUDINOT,
AND DOUGLAS WILDER SCHOOL,
VIRGINIA COMMONWEALTH UNIVERSITY,

        **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants[1] Ronnie Clements, Sarah Jane

Brubaker, Niraj Verma, F. Douglas Boudinet, and Douglas Wilder School, Virginia

Commonwealth University's ("VCU") Motion to Dismiss the matter against them pursuant to

Federal Rule of Civil Procedure 12(b)(6).[2]  (ECF No. 3.)  Despite receiving appropriate

*Roseboro* notice,[3] Plaintiff Richard Allen Brown, proceeding *pro se*, failed to respond to the

---

[1] The Complaint spells two names incorrectly:  Sarah Jane Brubaker (named as Susan Brubakker) and F. Douglas Boudinot (named as Jean Boudinott).  Exhibits attached to the Complaint confirm the misnomers in these two names.

Federal Rule of Civil Procedure 60(a) states, in pertinent part:  "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice."  Fed. R. Civ. P. 60(a).  Because the misspellings of these two Defendants' names appear to have been mistakes arising from Brown's oversight, the Court will order that these names be corrected in the record.

[2] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

[3] *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).  (Mot. Dismiss 3–4, ECF No. 2.)

Motion to Dismiss. The Court ordered Brown to respond (ECF No. 4), and Brown filed a response to the motion.[4] (ECF No. 8.) Defendants replied. (ECF No. 7.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion to Dismiss (ECF No. 2) and dismiss Brown's Complaint.

## I. Standard of Review

### A.     Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[4] Brown timely filed his response following the Court's order (ECF No. 5), but his filing lacked a certificate of service. (*See* ECF No. 6.) After instruction from the Clerk's Office for this United States District Court, Brown properly re-filed his response. (ECF No. 8.)

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions"

or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a

plaintiff must assert facts that rise above speculation and conceivability to those that "show" a

claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570;

Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

### B.  Effect of Extrinsic Documents

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to

and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that

is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*,

149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However,

"a court may consider official public records, documents central to plaintiff's claim, and

documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion

into one for summary judgment] so long as the authenticity of these documents is not disputed."

*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v.*

*St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190

F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va.

1995)).

Brown attached to his Complaint[5] an "Exhibit A" that consisted of email and letter communications among Brown and various VCU officials. (*See* Defs.' Filing of Exs. Ex. A, ECF No. 9-1.) Brown sufficiently referred to the exhibits in his Complaint; the documents are central to Brown's claims; and, neither party disputes their authenticity. The Court will thus consider these documents. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

### C.    Obligation to Construe *Pro se* Pleadings Liberally

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan,* 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). However, a *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Circuit Court of the City of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### D.    Special Deference Accorded to Academic Decisions Made by Educational Institutions

The Court must bear in mind the lens through which it examines this case because it involves academic decisions made by VCU, an educational institution, and its employees. "Courts are particularly ill-equipped to evaluate academic performance." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 (1978). "Like the decision of an individual professor as to the proper grade for a student in his [or her] course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id.* at 90.

---

[5] For reasons unknown, the documents attached to Brown's Complaint were not filed with this Court at the time of removal. Defendants filed the documents later as an attachment. (ECF No. 9.) However, the signature blocks and date stamp from the Richmond Circuit Court indicate that the documents were received and filed with Brown's Complaint. (*See id.* Ex. A. at 22–23, ECF No. 9-1.)

"A graduate or professional school is, after all, the best judge of its students' academic performance and their ability to master the required curriculum." *Id.* at 85 n.2.

Therefore, "[w]hen judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985); *see also Horowitz*, 435 U.S. at 91 (noting that judicial intervention in academic decisions by educational institutions must be exercised with "care and restraint" (citing *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). "In the absence of a constitutional or statutory deprivation, the federal courts should be loathe to interfere with the organization and operation of an institution of higher education." *Tigrett v. Rector and Visitors of the Univ. of Va.*, 290 F.3d 620, 629 (4th Cir. 2002) (citations omitted). Courts may not override an academic decision "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225; *see Manickavasagar v. Va. Commonwealth Univ. Sch. of Med.*, 667 F. Supp. 2d 635, 642 (E.D. Va. Oct. 16, 2009) ("Given the specialized nature of the academic environment, it is firmly settled that courts 'should only reluctantly intervene in academic decisions.'" (quoting *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998)). "This deference informs the context in which the . . . Complaint in this case must be evaluated, and it further underscores the need for the . . . Complaint to meet the pleading requirements articulated by the Supreme Court in *Twombly* [and *Iqbal*]." *Manickavasagar*, 667 F. Supp. 2d at 643.

## II.  Procedural and Factual Background

A.      **Summary of Allegations in Brown's Complaint**[6]

The Complaint describes Brown's difficulty with Professor Clements' graduate-level research methods class, Brown's resulting letter grade of "D" for the course, and Brown's attempts to convince the VCU administration to change this grade.  Although the Complaint lacks focus and Brown's claims are difficult to deconstruct, heeding the obligation to construe his Complaint liberally, the Court interprets the Complaint to raise five claims:

Claim I:       Pursuant to 42 U.S.C. § 1983,[7] all Defendants violated Brown's substantive and procedural due process rights guaranteed to him under the Fourteenth Amendment[8] to the United States Constitution in their management of his behavior issues in with Clements and when they affirmed his letter grade of "D" in Research Methods ("§ 1983 claim");

---

[6] For purposes of the Motion, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Brown. *Matkari*, 7 F.3d at 1134.

[7] The statute provides, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[8] That amendment states, in pertinent part:  "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

Claim II:       Clements violated Virginia Code §§ 18.1-255 (now § 18.2-416[9]) and 18.1-222[10] when Clements used profanity while teaching class ("curse and abuse claim");

Claim III:      All Defendants acted arbitrarily and capriciously, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706[11] when they failed to provide him with a hearing for his letter grade of "D" ("APA claim");

Claim IV:       Clements breached a contract with Brown when he changed a course syllabus in the middle of the semester ("breach of contract claim"); and,

---

[9] That so-called curse and abuse statute criminalizes the following conduct:

If any person shall, in the presence or hearing of another, curse or abuse such other person, or use any violent abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a Class 3 misdemeanor.

Va. Code § 18.2-416 (West 2015).

[10] The Virginia General Assembly repealed the entirety of Chapter 18.1 in 1975. *See* Va. Code Ann. § 18.2-2 (West 2015). While the legislature replaced § 18.1-255 with § 18.2-416, it repealed and did not replace § 18.1-222, which had addressed an officer's ability to take charge of a mistreated animal. *See* H.D. 10, 1973 Gen. Assemb., Reg Sess., at 15–16 (Va. 1973).

[11] The APA addresses scope of review as follows:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
    (B) contrary to constitutional right, power, privilege, or immunity . . . .

5 U.S.C. § 706.

Claim V:    All Defendants retaliated against Brown in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3,[12] when they allowed Brown's letter grade of "D" to stand after Brown reported his due process concerns ("retaliation claim").

At all times relevant to this action, Brown was a graduate student at VCU in the L. Douglas Wilder School of Government and Public Affairs. In the spring semester of 2014, Defendant Ronnie Clements taught a required graduate course called "Research Method[s] for Government and Public Affairs" ("Research Methods"). (Compl. 1.) Brown enrolled in the class.

Brown raises various issues about his interactions with Clements and his resulting letter grade of "D" in Research Methods. On February 6, 2014, Clements used language during class that Brown felt was profane and constituted bullying. Brown confronted Clements after class, and Clements responded that he could "use any language he please[d]." (Compl. 1.) Brown also sent Clements an email outlining his frustration with Clements' language. Clements responded

---

[12] Brown does not cite any specific section of Title VII in his Complaint, but he clarified in his Response to Defendants' Motion that he intended to state a claim for "retaliation." (Resp. Mot. 2, ECF No. 8.) Construing his allegations liberally, it appears that Brown attempts to state a claim under the retaliation provisions of Title VII at 42 U.S.C. § 2000e-3, which proscribe unlawful employment discrimination, stating in pertinent part:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

8

to Brown with an emailed apology, explaining that he did not intend to direct the offending word at Brown.

Brown filed a complaint with VCU officials, including Defendant Sarah Brubaker, Associate Dean at the Wilder School, regarding Clements' behavior. A few weeks later, Brown attempted to speak with Clements after class. Clements responded that he had been instructed not to speak with Brown without a third party present. Brown protested this requirement with I-Shian (Ivan) Suen and John Accordino, who are not named in Brown's Complaint.

Defendants Brubaker and Richard Huff, Director of Graduate Studies at the Wilder School, reached out to Brown and scheduled a March 24, 2014 meeting to discuss Brown's complaints. Brown did not attend the meeting and did not inform Brubaker or Huff that he would not attend until the appointment time had passed. Brubaker memorialized Brown's absence from the conference in two emails to Brown, reminding him that the meeting had been an opportunity for him to discuss issues with his classes and that he was required to comply with the VCU Student Code of Conduct ("Code of Conduct").

Brown had refused to attend the meeting because Clements was not present. The parties arranged another meeting among Brown, Brubaker, and Huff, this time including Clements. At the April 2, 2014 appointment, Clements outlined the problems that Brown had exhibited in class, including "asking excessive questions in class, dominating class time," interfering with the learning environment, "[a]ddressing the instructor in a disrespectful way," and participating inappropriately in an event involving community members. (Compl. Ex. A, Letter from Sarah Jane Brubaker to Richard Brown ("Brubaker Letter"), ECF No. 9-1, at 12–13.) Brubaker summarized the discussion in an undated letter to Brown, reminding him again of the importance

of the Code of Conduct and explaining that continued inappropriate behavior would result in the filing of formal charges with the VCU Office of Student Conduct.

On April 25, 2014, Clements emailed Brown and informed him that he had again disrupted class. Clements stated that he would not file a formal complaint against Brown for his behavior. However, he copied Dr. Suen on the email and stated that Dr. Suen could file a complaint if he believed it warranted. Importantly, the Complaint does not allege, and no exhibits indicate, that any VCU officials ever filed a formal or informal behavioral complaint against Brown.

At the conclusion of Research Methods, Brown received a letter grade of "D." After he received his grade, Brown filed complaints with VCU for discrimination and unfair treatment. VCU reviewed the complaints and found that they lacked merit. "[M]ultiple offices" at VCU also reviewed Brown's appeal of his Research Methods grade and apparently upheld the "D." (Compl. Ex. A, Letter from F. Douglas Boudinot to Richard A. Brown ("Boudinot Letter"), ECF No. 9-1, at 17.) In a January 14, 2015 letter to Brown, Defendant Boudinot, the Dean of the Wilder School, noted that "[n]o barriers" existed to prevent Brown from obtaining a "Master of Urban and Regional Planning degree" and that Brown was "currently engaged towards that positive goal." (*Id.*)

## B. Procedural History

On January 27, 2015, Brown filed his Complaint in the Circuit Court for the City of Richmond, Virginia. (Compl. 1, ECF No. 1-1.) Brown's meandering Complaint makes it difficult to ascertain his claims, but the Court generously discerns the five claims articulated above as stemming from Brown's Complaint. In the Complaint's closing, Brown seeks the following relief from the Court: (1) to hold Clements liable for violations of Virginia criminal

10

codes and the Code of Conduct; (2) to mandate that VCU remove Brown's "D" grade from his transcript and credit the tuition charged for Clements's class to his account; and, (3) to remove Defendant Brubaker's letter from Brown's record. (Compl. 5.)

On February 24, 2015, Defendants removed the action to this Court. (Not. Removal 1, ECF No. 1.) On the same day, Defendants filed the present Motion to Dismiss, arguing, *inter alia*, that Brown has failed to state any claim upon which relief may be granted and that all of Brown's claims are barred by the doctrine of sovereign and qualified immunity. (ECF No. 2.) Brown has responded and Defendants have replied. Accordingly, this matter is ripe for disposition.

## III. Analysis

### A.   Brown Fails to State a Claim for Violation of His Due Process Rights

The Court must dismiss Claim I, Brown's § 1983 claim, because he fails to state a claim upon which relief can be granted for a violation of his substantive or procedural due process rights. Specifically, he does not articulate sufficient facts to suggest that he held any liberty or property interest in the grade received or any grade change or Defendants' management of his behavioral issues. Even assuming that he had such an interest, the Defendants provided him with adequate process. Thus, Claim I fails.

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). To state either a procedural or a substantive due process claim, a plaintiff must first show that he or she had "a constitutionally protected liberty or property interest." *Stone v. Univ. of Md. Med. Sys. Corp.*,

11

855 F.2d 167, 172 (4th Cir. 1988) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)). Here, Brown does not state sufficient facts to plausibly claim that he held any liberty or property interest at issue in this action. Even if he did so, Brown fails to plead "factual content that allows the court to draw the reasonable inference" that Defendants violated his substantive or procedural due process rights. *Iqbal*, 556 U.S. at 678 (citation omitted). Because Brown fails to state a claim for a violation of his rights under the Constitution or a federal law, he necessarily cannot make a claim for a violation under 42 U.S.C. § 1983. *See Dowe*, 145 F.3d at 658.

### 1. Brown Fails to Articulate Any Constitutionally Recognized Liberty or Property Interest

Brown fails to state sufficient facts to demonstrate that he had any constitutionally recognized property or liberty interest in his grade in Clements' Research Methods class or the way that Defendants handled his purportedly disruptive conduct. A property interest protected by procedural due process must be "a legitimate claim of entitlement" created not by federal law, but by "existing rules or understandings that stem from an independent source such as state law." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 336 (E.D. Va. 2005) (citing *Roth*, 408 U.S. at 569), *aff'd*, 193 F. App'x 248 (4th Cir. 2006) (per curiam). "[S]ubstantive due process rights are created only by the Constitution." *Ewing*, 474 U.S. at 229 (Powell, J. concurring) (citing *Roth*, 408 U.S. at 577).

A liberty interest may be implicated when a plaintiff shows that he or she suffered from a "reputational injury . . . accompanied by a state action that 'distinctly altered or extinguished' his [or her] legal status." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314–15 (4th Cir. 2012) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976); *see id.* at 315 (holding that comments about termination of consultant relationship with Coast Guard did not involve liberty interest in part because private employment loss, or impact on future employability, did not constitute

12

constitutional injury); *Tigrett*, 290 F.3d at 629 (citing *Knussman v. Maryland*, 272 F.3d 625, 628–29 (4th Cir. 2001)); *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (ruling that a newspaper report of reason for prison employee's demotion did not implicate liberty interest because damage from change in employment status did not stem from publication of demotion).

a.    **Brown Fails to Plead Adequately a Property Interest**

Brown fails to plead adequately a property interest at issue in this action. No court to date has found that a property interest exists in a particular grade when the grade has no impact on the student's enrollment.[13] *See Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013) ("[A] student who is not denied access to public education does not have a property or liberty interest implicated."); *Smith v. Utah Valley Univ.*, No. 1:13cv01650, 2015 WL 1279869, at *4 (S.D. Ind. 2015) ("[N]o court has found that students have a property interest in receiving a specific grade."); *Hubbard v. John Tyler Cmty. Coll.*, 455 F. Supp. 753, 756 (E.D. Va. 1978) (noting that, in the context of substantive and procedural due process, "the grades given to plaintiff . . . are not the subject of judicial scrutiny"). Brown takes issue with his Research Methods "D" grade. However, Brown alleges nothing suggesting that this grade has affected his enrollment at or

---

[13] In the context of academic dismissals, some courts, including the Supreme Court, have assumed without deciding that a student carries a property interest in continued enrollment. *See Ewing*, 474 U.S. at 222–23; *Horowitz*, 435 U.S. at 84–85; *Tigrett*, 290 F.3d at 627.

Other courts, however, have held that "the plaintiff did not have a protected interest in continued enrollment." *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12cv236, 2012 WL 2878608, at *6 (E.D. Va. July 13, 2012) (citing cases), *aff'd*, 523 F. App'x 204 (4th Cir. 2013); *Nigro v. Va. Commonwealth Univ. Med. College of Va.*, No. 5:09cv00064, 2010 WL 2262539, at *5 (W.D. Va. June 4, 2010) (finding that a medical residency primarily raised academic, not employment concerns, and concluding that "[t]he plaintiff has not pointed to any authority affirmatively establishing that Virginia college students possess a property interest in continued enrollment."), *aff'd*, 492 F. App'x 347 (4th Cir. 2012).

The Complaint and uncontested accompanying exhibits indicate that Brown not only remains enrolled at VCU, but is on track to graduate. (*See* Boudinot Letter 1.) These circumstances obviate any need for this Court to examine whether Brown has a property interest in continued enrollment at VCU.

projected graduation from VCU, because the Complaint and its uncontested accompanying exhibits show that he remains on track to graduate.

Further, to the extent Brown attempts to argue some procedural due process property interest in the particular method by which Defendants chose to address his behavioral problems, he also fails. The Complaint and accompanying exhibits make clear that no officials ever filed a formal or informal disciplinary complaint against Brown and no barriers exist to prevent Brown from graduating. Again, absent any impediments to Brown's continued enrollment in the graduate program, the Court cannot find that Brown has alleged a property interest. Accordingly, Brown fails to state sufficient facts to plead a property interest as part of his § 1983 claim.

### b.    Brown Fails to Plead Adequately a Liberty Interest

Brown also fails to plead sufficient facts to allow the Court to draw a reasonable inference that a liberty interest is implicated in this action. "[A]n injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett*, 290 F.3d at 628 (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)); *accord Shirvinski*, 673 F.3d at 314–15. Similarly, without some impact on a student's enrollment, a grade or the management of a student's behavioral issues cannot involve a protected liberty interest. *See Smith*, 507 F. App'x at 362 ("[A] student who is not denied access to public education does not have a property or liberty interest implicated."); *Nigro*, 2010 WL 2262539, at *7.

14

Brown attempts to allege a liberty interest in his reputation among his peers and other professors during VCU's management of his behavioral issues.[14]  Brown alleges that Defendants disclosed to other students[15] some circumstances surrounding Brown's behavioral issues, apparently resulting in the refusal of students to work with Brown on group assignments.  He also states that some disclosure within the graduate school faculty occurred, causing some faculty members to decline to work with Brown on a project.  However, Brown claims no injury beyond the refusals of some peers and professors to work with him.  He does not contend that these refusals posed any real obstacle to his further education or employment or in any way altered or extinguished his "legal status."  *See Shirvinski*, 673 F.3d at 315 (citation omitted).  Accordingly, Brown fails to state sufficient facts to plead, plausibly, a liberty interest as part of his § 1983 claim.

### 2.   Even if Brown Pled a Liberty or Property Interest, He Fails to Plead Adequately that Defendants Deprived Him of that Interest in Violation of His Procedural or Substantive Due Process Rights

Even assuming that Brown has sufficiently pled a liberty or property interest in a specific grade or the management of his purportedly disruptive conduct at VCU, he fails to plead adequately facts plausibly showing that the Defendants violated either his procedural or substantive due process rights.

---

[14] Brown actually alleges infringement upon his "*property* interest in his individual and professional reputation." (Compl. 4 (emphasis added).)  Having found above that no property interest exists, the Court evaluates, construing Brown's Complaint liberally, a potential liberty interest.

[15] Brown cites to Va. Code Ann. § 17.1-913 (West 2015) to argue the confidential nature of his behavioral issues.  However, this Code section governs confidentiality within the Judicial Inquiry and Review Commission.  It does not pertain to Brown's claims.

15

### a.   Brown Fails to Plead Facts Sufficient to State a Claim for a Violation of His Procedural Due Process Rights[16]

In the context of an academic *dismissal* decision, procedural due process requires only "an 'informal give-and-take' between the student and the administrative body dismissing him [or her] that would, at least, give the student 'the opportunity to characterize his [or her] conduct and put it in what he [or she] deems the proper context." *Horowitz*, 435 U.S. at 86 (citing *Goss*, at 584). Courts have long found that even upon academic dismissal, a student has no right to a hearing. *Nofsinger*, 2012 WL 2878608, at *8 (citing *Horowitz*, 435 U.S. at 85, 90–91); *accord Lewin v. Med. Coll. of Hampton Roads*, 910 F. Supp. 1161, 1167 (E.D. Va. 1996), *aff'd*, 131 F.3d 135 (4th Cir. 1997). Surely, the procedural due process required for a decision about a grade, or about consequences for behavioral issues—absent enrollment consequences (or even a school-initiated complaint)—should not surpass the process due for an academic dismissal.

Indeed, courts have specifically noted that students have no right to a hearing regarding challenged grades. "[T]the decision of an individual professor as to the proper grade for a student in his [or her] course . . . requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Nofsinger*, 2012 WL 2878608, at *8 (quoting *Horowitz*, 435 U.S. at 90–91). If a student were to challenge a grade, or an academic dismissal, "[a] hearing is certainly not required, and a 'careful and deliberate' decision is clearly sufficient." *Nofsinger*, 2012 WL 2878608, at *8 (citing *Horowitz*, 435 U.S. at 85, 90–91).

---

[16] The Court examines Brown's procedural due process rights with the acknowledgment that "the Supreme Court and lower federal courts have taught that 'the standard for evaluating whether there has been a denial of procedural due process is substantially relaxed.'" *Nofsinger*, 2012 WL 2878608, at *8 (citing *Betts v. Rector & Visitors of the Univ. of Va.*, 191 F.3d 447, at *8 (4th Cir. 1999)).

Here, Defendants afforded Brown numerous opportunities to explain his conduct in Research Methods in an informal give-and-take context through extensive correspondence and multiple meetings with Clements as well as high-ranking VCU administrators.  Defendants gave Brown ample notice of the possibility of a lower grade and potential disciplinary complaints via letters and emails to Brown.  This correspondence fully documents Brown's struggles with the course, both to Brown at the time and to the Court on this record.  Finally, VCU provided Brown an appeals process to dispute the "D."

The Court has little difficulty concluding that Brown's "D" grade and VCU's management of his behavioral issues were the products of "careful and deliberate decision[s]." *Nofsinger*, 2012 WL 2878608, at *8; *see Horowitz*, 435 U.S. at 90–91.  Other than Brown's disagreement with the results,[17] "[t]here is nothing in the record to indicate that [Brown's appeals to Clements and other VCU officials] were not carefully and deliberately reviewed."  *Perez v. Univ. of Charleston*, 201 F.3d 436, at *1 (4th Cir. 1999).  Accordingly, Brown fails to state sufficient facts that could plausibly allege a violation of his procedural due process rights as part of his § 1983 claim.

---

[17] To the extent that Brown contends that the Code of Conduct created heightened procedural due process protections, his argument fails.  "Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due[,] and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution." *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) (evaluating property interest in employment and state created procedures for pre-termination rights for employee).  The Code of Conduct cannot create, define, or extend the process due to Brown.  Only the Constitution may do so.

**b.**   **Brown Fails to Plead Facts Sufficient to State a Claim for a Violation of His Substantive Due Process Rights[18]**

"In the area of academics, substantive due process protection shields individuals only from actions that are arbitrary and capricious." *Davis*, 395 F. Supp. 2d at 336 (citing *Horowitz*, 435 U.S. at 91–92). "[T]he Court 'may not override [an academic decision] . . . unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Lewin*, 910 F. Supp. at 1167 (second alteration in original) (citing *Ewing*, 474 U.S. at 225).

Here, as explained above, Defendants provided Brown with extensive opportunities to discuss and object to Clements' characterization of Brown's classroom behavior and to provide explanations for his conduct. Defendants also gave Brown sufficient notice that Clements would likely find that he performed poorly in the class through the various meetings conducted and correspondence exchanged. Finally, following receipt of his grade, Brown had the opportunity to dispute the "D" and file internal complaints with VCU for his Research Methods experience.

The Court cannot find that Defendants' actions regarding Brown's grade or his behavioral problems constituted a "substantial departure from accepted academic norms" or were "arbitrary and capricious." *See Davis*, 395 F. Supp. 2d at 337; *Lewin*, 910 F. Supp. at 1167 (citing *Ewing*, 474 U.S. at 225); *cf. Hubbard*, 455 F. Supp. at 755–56 ("[T]his Court, recognizing that courts are indeed 'ill equipped to evaluate academic performance,' specifically refrains from an evaluation of the various disputes between plaintiff and her instructors."). The actions taken by Defendants were neither arbitrary nor capricious, but instead were taken with care and deliberation, giving Brown ample opportunities to dispute his grade and his treatment by

---

[18] The Court analyzes Brown's substantive due process rights with the "caution and restraint" that the Supreme Court has instructed courts to use. *Ewing*, 474 U.S. at 229 (Powell, J., concurring) (citing *Moore v. East Cleveland*, 431 U.S. 494, 502 (1977)).

Defendants. Accordingly, Brown fails to state a claim for which relief can be granted for a violation of his substantive due process rights as part of his § 1983 claim.

For the reasons stated above, the Court dismisses Claim I, Brown's § 1983 claim.

### B.     Brown Fails to State a Claim Under the Virginia Criminal Code

As to Claim II, Brown appears to try to assert a "curse and abuse" claim by challenging Clements' use of a four-letter "s-word" during class.[19] Brown avers that Clements violated Va. Code § 18.1-255, now § 18.2-416, which makes cursing or using violent abusive language against a person or his or her relatives a Class 3 misdemeanor under Virginia law. Va. Code Ann. § 18.2-416 (West 2015).

Brown cannot import this criminal statute into his civil complaint. "Unless there is a clear [legislative] intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute." *Tribble v. Reedy*, 888 F.2d 1387, at *1 (4th Cir. 1989) (discussing federal criminal statutes); *see also Crawford v. Adair*, No. 3:08cv281, 2008 WL 2952488, at *2 (E.D. Va. July 29, 2008) (same). A "bare criminal statute" provides for no express civil remedy.[20] *Tribble*, 888 F.2d at *1. Section 18.2-416 is such a "bare criminal statute" and does not create a private right of action. *See id.* Accordingly, Brown fails to state

---

[19] Brown also mentions Va. Code § 18.1-222 in Claim II. This contention utterly fails. Va. Code § 18.1-222 had addressed an officer's ability to take charge of a mistreated animal, and was repealed in 1975. *See* H.D. 10, 1973 Gen. Assemb., Reg Sess., at 15–16 (Va. 1973). Brown cannot state a claim for which relief can be granted under § 18.1-222 some 40 years after that statute's repeal, which was decades before the events at bar occurred. Brown's complaint has nothing to do with mistreated animals, and the Virginia General Assembly never replaced § 18.1-222 in any event.

[20] Some criminal statutes do provide for private causes of action. *See, e.g.*, Va. Code Ann. 18.2-500 (West 2015) (expressly providing for a civil cause of action for violations of Va. Code Ann. § 18.2-499 (West 2015), which places criminal penalties on concerted action by persons seeking to damage another's reputation, trade, business or profession).

claims upon which relief can be granted for violations of Va. Code Ann. §§ 18.1-222 or 18.1-255. The Court dismisses Claim II, Brown's curse and abuse claim.

### C.    The Administrative Procedure Act Does Not Apply to Defendants

Brown fails to state a claim under the APA in Claim III. "The APA governs decisions by 'each authority of the Government of the United States.'" *Johnson v. Rodriguez*, 943 F.2d 104, 109 n.5 (1st Cir. 1991) (citing 5 U.S.C. § 701(b)(1)). "It does not purport to affect the review processes of state agencies or commissions." *Id.* (citation omitted). VCU is an arm of the Commonwealth of Virginia, *see Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 363–64 (E.D. Va. 2004), not the United States. *See also* Va. Code Ann. § 23-14 (West 2015). As such, the APA does not apply to the decisions of VCU or its employees. Accordingly, Brown fails to state a claim upon which relief can be granted for a cause of action under the APA. The Court dismisses Claim III, Brown's APA claim.

### D.    Brown Fails to State a Claim for Breach of Contract

In Claim IV, Brown fails to plead adequate facts to suggest, plausibly, that he has a claim for breach of contract. To state a claim for breach of contract under Virginia law, a plaintiff must first plausibly allege a legally enforceable obligation of a defendant to a plaintiff.[21] *Filak*, 594 S.E.2d at 614. "A legally enforceable obligation is shown by establishing an offer, acceptance, and valuable consideration." *Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 870 (E.D. Va. 2014) (citation omitted). For a contract to be a legally enforceable obligation, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981).

---

[21] In addition to alleging a legally enforceable obligation, a plaintiff must also allege the defendant's violation or breach of the obligation and an injury or harm caused by the defendant's breach. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). These elements are not at issue in this case because the Complaint fails to allege the existence of a legally enforceable obligation.

"Each party must exchange[ ] promises in which each must be bound to act or refrain from acting." *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, No. 3:11cv630, 2012 WL 2905110, at *4 (E.D. Va. July 16, 2012) (alteration in original) (citation omitted) (internal quotation marks omitted). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996) (citation omitted).

Brown fails to state a claim for breach of contract based on Clements' change of his syllabus midway through the semester, because the Complaint fails to contain plausible factual allegations that a legally enforceable obligation between Brown and Clements existed. Brown alleges no offer, no acceptance, and no valuable consideration. In particular, no facts alleged plausibly suggest the mutual assent of Brown and Clements to the existence of one fixed syllabus throughout the semester. *Cf. Davis*, 395 F. Supp. 2d at 337 (finding that a university catalog was not a contract between the school and the student because it lacked mutuality of engagement). Without a plausible allegation that a contract exists, Brown necessarily fails to state a claim for breach of contract. The Court dismisses Claim IV, Brown's breach of contract claim.

### E.    Brown Fails to State a Claim for Title VII Retaliation

In Claim V, Brown fails to plead adequate facts to suggest, plausibly, that he has a claim for retaliation under Title VII. To claim retaliation under Title VII, a plaintiff must allege that: (1) plaintiff engaged in protected activity; (2) plaintiff's employer took an adverse employment action against the plaintiff; and, (3) "a causal connection existed between the protected activity and the adverse action." *Conyers v. Va. Housing Dev. Auth.*, 927 F. Supp. 2d 285, 294–95 (E.D. Va.), *aff'd*, 533 F. App'x 342 (4th Cir. 2013) (per curiam), *cert. denied*, 134 S. Ct. 1028 (2014). An employee engages in protected activity when, among other things not pertinent here, he or

she opposes an employment practice or "makes a charge, testifies, or participates 'in any manner in a Title VII investigation, proceeding, or hearing.'" *Id.* at 295 (quoting *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999)).

Here, any attempt Brown has made in his Complaint to allege a Title VII retaliation claim fails because Title VII does not cover him as a graduate student and because he has not alleged that he engaged in protected activity. First, he clearly alleges that VCU enrolled him as a student, not as an employee. *See* 42 U.S.C. § 2000e-3 ("It shall be an unlawful *employment* practice for an *employer* to discriminate against any of his *employees* or applicants for *employment* . . . ." (emphasis added)). *But cf. Nigro*, 2010 WL 2262539, at *5 (noting, in dissimilar circumstances, that medical residents are both students and employees). Second, Brown alleges no facts to suggest that he participated in a "Title VII investigation, proceeding, or hearing." *Conyers*, 927 F. Supp. 2d at 295 (citation omitted). Accordingly, Brown fails to state a claim upon which relief can be granted for Title VII retaliation.[22] The Court dismisses Claim V, Brown's retaliation claim.

F.      **The Court Need Not Address Sovereign Immunity**

Finally, the Court will not address the merits of Defendants' sovereign immunity argument because Defendants do not successfully articulate their argument in two ways. First, they omit mention of the proper avenue through which Brown's claims could possibly be barred

---

[22] Because Brown fails to establish an employer-employee relationship, one of the required elements for Title VII retaliation, the Court need not address the other elements. *See Conyers*, 297 F. Supp. at 296.

22

in this Court, namely, the Eleventh Amendment.[23] Instead, they "invoke[ ] state sovereign immunity principles." *Nofsinger*, 2012 WL 2878608, at *12 n.7.

Second, and more problematic for the Court, Brown does not seek monetary damages. Brown requests injunctive relief only, potentially placing his claims under the *Ex Parte Young* exception to sovereign immunity. *See Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 291–92 (4th Cir. 2001) ("[T]the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law.") (citing *Ex parte Young*, 209 U.S. 123 (1908); *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir.1999)); *Huang v. Board of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990) ("[I]t is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities."); *Herron*, 366 F. Supp. 2d at 363 n.11. The evaluation of the *Ex Parte Young* doctrine would necessarily involve a complicated, case-specific analysis. *See Bragg*, 248 F.3d at 292–93.

Because the Court finds that Brown fails to state a claim upon which relief can be granted as to every claim at bar, and because Defendants fail to place support for their sovereign immunity argument squarely before this Court, the Court need not address this issue.

---

[23] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

## **V.  Conclusion**

For the foregoing reasons, the Court will grant the Motion to Dismiss (ECF No. 3) and

dismiss Brown's Complaint.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: _9-23-15_
Richmond, Virginia